Our final case this morning, 19-4002, is Souza v. Thurston. I can see only the Civil Procedure nerds are left in the audience. You may proceed, Mr. Eisenberg. Thank you. May it please the Court, my name is Ryan Eisenberg and I represent John Souza in his capacity as a custodian of Elevate. So we're here, yes, on a Civil Procedure matter that is one of first impression and I would probably suggest it's really one of first impression in any of the circuits. It's probably about time that we have some circuit law on this particular matter. I want to give the Court, at least start out with a little bit of the very little factual background that we have because we don't have much of a record in this case. It may mean that we get out of here in less than half an hour. So Mr. Souza was appointed as a custodian of the company in October of 2017. He was granted the right to use the discovery processes to obtain information. Subpoenas were sent out, including one to Mr. Thurston by a certified mail to the post office box that he has acknowledged is his post office box. The envelope was marked refused and returned to my office. I then filed a motion to compel under the subpoena. The magistrate denied the motion to compel. Why can't this case then be decided completely on 45C2? And that's one of the reasons the trial court did it. So there are a couple of answers to that question. Well, are they legal answers? That's the question, counsel. So I think the premise of the, yeah, so let me back up. The magistrate court made a finding that there was a requirement that a production be made in Atlanta, right, which was not accurate. The district court didn't address that issue, right? So we raised that with the district court and said there was an instruction, there was an attachment. It said we're expecting all of this production to be electronic. I mean, that's the reality of modern practice is the days of people saying, hey, I have all these boxes in a warehouse. You can come and look at them. That doesn't happen anymore. We get, even if there are documents, almost exclusively they get scanned at this point. But we assume that many of the documents that we're asking for are bank records that were electronically accessible, accounting data that existed electronically. And my obligation under Rule 1, my obligation under Rule 45D1 is to make the burden and expense as minimal as possible. So the instruction that was attached to the subpoena, and I don't prepare the form for the subpoena, expressly said we want this by mail or email or a shared drive. But if you want to make a physical production, let me know. I'll find a place within a 100-mile radius. So it doesn't make a whole lot of sense to say I can make Mr. Thurston drive 200 miles, 100 miles back and forth to bring whatever it was somewhere, and that's okay. But I can't ask him to sit on his couch in his pajamas and upload the information to a computer and have that transmitted to me. So I would suggest that this question of did we require production in Atlanta is not the right question. And really all it takes is taking a look at the instruction to do that. And the district court didn't rely on that anyway, right? Correct. And didn't the district court use a different rationale than the magistrate judge generally in terms of resolving this case? I mean, as I read what the court did, it basically accepted your reasonable assurance of delivery standard and just imported facts, and one can argue about those facts, but imported facts to determine that you didn't satisfy that standard. I agree that's what it appears that the district court did. But I want to be clear that there are two issues with that. One is the district court relied on the erroneous facts, right, relating to the availability of the address. So I want to make it clear, I had, I mean... Why don't you say why you believe that's erroneous? So this is not in the record, of course, because there's no opportunity to put much in the circumstance. We had sent out other subpoenas, including a subpoena to Elevate's former lawyer. We had obtained records that included Mr. Thurston's post office box. There was no residential address. We sent the subpoena to the P.O. box, and about the same time, we sent the form, and it is in the record, requesting the address, the residential address associated with the box. That was returned to my office in early January, just before the motion to compel was filed. When the motion was filed, I made sure to include that address on the certificate of service. What the magistrate picked up on was the fact that the residential address was included in the certificate of service, and presumed that I had his address at the time that I sent the subpoena to the P.O. box by certified mail. And that is emphatically not the case. I know that you've argued that a number of times. I take it, then, that the only basis, at least the only basis I could discern in the record for the magistrate judge's conclusion, really, is that inference coming from the presence on your certificate of service. There is no other indication in the record that you would have had that address, right? I believe the magistrate said that expressly. Well, and interestingly enough, the magistrate judge did not consider the facts that were included in the unsworn declaration of Mr. Thurston, right? It appears that's correct. But is it the case that the district court, the facts that it alluded to, where did they come from? So, it appears that the district court considered this question of residence. The standard of review that the district court has to apply when there's a conflicting testimony issue or conflicting evidence before the magistrate is one that's de novo, right? But there was no conflicting evidence before the magistrate at the time. So, it sort of creates this problem of, you know, the standard of review that the district court employed was, you know, it was just looking at whether there were clearly erroneous conclusions. And I think that limits your ability also to review what was done. What you're saying was the standard that the district court had in the case of the objection is de novo as it relates to legal conclusions and whether it's clearly erroneous as it relates to the magistrate judge's factual determinations. Is that the position? That's right. Okay, well, let me follow up. If that's the position, then the question is, when the district court determines that you had the residence at the time that you issued the subpoena, the question would be, is that a clearly erroneous determination, right? It would have to be clearly erroneous. That's the question and that's the answer, right? Yes. Okay. Now, when the district court also relied in finding that you had not satisfied the reasonable assurance standard, also relied on the fact that Mr. Thurston said he had not received the notice. Now, where in the record would you be able to find that? That's in his declaration that the magistrate didn't consider. So, it's not clear to me. The district court's review isn't very substantial, so it's not clear to me whether the district court considered that or not. That's the fact that the district court relied on, right? I don't think we can conclude from the district court's short analysis that, I don't know if that's, I don't know if I can draw that conclusion from what the district court said. Well, let's be sure what conclusion we're talking about. The only fact, the fact that I'm talking about is the fact that the district court said Mr. Thurston never received the unless the district court made that up, where in the record could it have found anything that says that? It is in Mr. Thurston's declaration. So then the question is what we do with Mr. Thurston's declaration, right? Right. Okay. So, and of course the magistrate didn't consider it. Well, do you think we should consider it? I think what this court should do is take a step back, because Well, please answer the question. Do you think that the declaration is an appropriate subject from which we could infer facts? It is an unsworn declaration, it invokes Utah law, not signed under penalty of perjury. It's up to you. Tell me, is that appropriate for us to consider? I don't think given the circumstances it's appropriate, no. If the magistrate didn't consider it, then the district court shouldn't have considered it and this court shouldn't consider it. Because had the magistrate considered it, then that would affect the district court's obligation as to how to view the facts. And we actually asked for a hearing, and I think it suggested that that would have been appropriate and there was no opportunity to do that. But I do want to spend a little bit of time on this issue of what the standard is and what the definitions are and what's required. Because the magistrate's assumption as it relates to the, did I have his address, gets back to his view that I had some obligation to come to him and ask for permission before I was able to serve by certified mail, because certified mail is an alternative form of service. And I don't agree with that proposition. If the court looks, and I'm not going to go over the cases that are cited in the brief, they're all district court cases. Those cases that take a look at the language of the rule, it's now Rule 45B, it was C previously, that talk about deliver, have come to the conclusion, and I will, I guess, refer to the Ott case, that was the Seventh Circuit case that addressed it specifically, that an adult mail carrier delivering certified mail fits within the definition. And that there's no, there's nothing in the rule that suggests that delivery by certified mail is appropriate as an alternative mechanism. And frankly, there's no alternative service language in the rule. It's either been delivered or it hasn't. And it does say, 45B1 says delivering a copy to the name person, why would dropping it in the mailbox at his house satisfy that language? Dropping it in the mailbox may not, and I'm not arguing that regular mail would be sufficient. What I am arguing is that certified mail and the processes and the postal rules, I think have been cited in the briefs, that process requires you take the certified green card to the post office, they transport it from one post office to another post office, the PO box, they leave a little note in the box, the recipient takes the note to, you know, you get in line, you give it to the clerk and they go retrieve the package and they give it to you. That's delivery, right? I mean, and in this particular case, in order for, and I think this is where there would be some subject of factual dispute on remand, is if Mr. Thurston wants to say, I never got it, or I didn't even refuse service, that's something that we can consider. He definitely says he didn't get it, and the box was used by other people than him. So it seems to me, beyond the legal issue, there is a factual dispute underlying this as to whether your means of service, let's assume you're right, that as a matter of law, you could deliver it if it was reasonably assured to get to the recipient, then there is a factual issue as to whether what you did was reasonably assured to get to the recipient in this situation, right? Yes, yes. And I think looking at those issues, you know, I don't find it credible, and I guess this would be the factual determination, that the postmaster on his own marked it refused and returned it. And whether there was anybody else on the box or he sent other people to go get it, I don't think changes the analysis. Well, if he shared the box, and I'm not going to take the time to pull up the declaration now, but I thought he said he shared it with other folks, and if he shared the box and somebody went and refused it, then that's going to be an issue, right? And I don't think that's what it says. I think it says that he would, or at least what I took from it was that he would send people to retrieve the mail for him. And then the question would be whether somebody felt authorized to refuse it without telling him. I think that would be a reasonable question. And just like if you sent it to his house and he was married and it got signed by his wife, I think that opens the door to this question of whether it was delivered or not, but not whether or not it's appropriate to serve it by certified mail or whether that constitutes appropriate delivery under Rule 45. I see my time has expired. Thank you, Counsel. Good morning, Your Honors. Good morning. May it please the Court, Brennan Moss on behalf of… Lift the mic a little bit. Is that a little bit better? That's great. There we go. Brennan Moss on behalf of Wright Thurston, the appellee in this case. And to start out today, I just wanted to mention the standard of review because I think it's important. The standard of review that was identified by the appellant is one that we agreed with, which was an abuse of discretion standard as it relates to determining or dealing with facts, but if there are clearly erroneous factual findings or if there is legal error, that is by definition abuse of discretion. Is that right? That is correct. Yep. And that's the standard that was set forth in Valerio v. Van de Hey by this Court in 2009. I think that's accurate. This case, I think, it's an interesting one for civil procedure and it's interesting as you dig into what personal service means under Rule 45 because service under 45 is different slightly than what it is under Rule 4. And in some regards, it is more strict and in others, it's just silent altogether. And there's this question of whether service has to be by hand or whether it can be delivered in any other manner. The way in which it's more strict under Rule 45, which was pointed out by Your Honor, which is that it has to be done in person. It has to be done to the person that is actually under the subpoena. So, under Rule 4, if you're serving a complaint, then you can serve it to anyone in your household or your place of business where you reside. For a subpoena, it must be delivered to the person personally. And in this case, I think the evidence or the facts… I mean, that's implying it has to be a hand-to-hand delivery. And that's not in the text of the rule, is it? I agree. Yes. And that is where there's a little bit of ambiguity here. It has to be delivered to the person by someone who is 18 years of age. It does not say whether it has to be hand-to-hand. And this circuit has not weighed in on whether it has to be hand-to-hand or not. The way that Utah, the District of Utah has handled that has been to assume that it has to be hand-to-hand unless someone requests for alternative service. And there are some cases where the district court has allowed that after showing that they have made other attempts to do personal service. Well, has it really done that? Because it seems to me that there's a distinction between what the district court did and what the magistrate judge did. The magistrate judge followed that line of reasoning that you're talking about, viewing it as alternative service. The district court didn't do that. I didn't see any reference to it adopting that rationale. In fact, what it did appear to do is at least spot him the rationale that he gave, which was a reasonable assurance of delivery, and find that he didn't satisfy that as a matter of law because the facts did not support that. I mean, if you believe that these are – did they apply the same rationale? I didn't see that. And if you're saying that the district court did apply the rationale, the magistrate judge, point to me language in that opinion that says that. And I misspoke. I think your Honor's correct. What I was referring to is earlier the appellant cites a case, Gulf Coast. Yes. Shippers, yes. Which is a different district court of Utah case. It's the Gulf Coast Shippers Limited Partnership versus DHL. It is a different district court of Utah case that is not this case. And in that case they allowed for service of subpoena by certified mail, but only after other attempts had been made to personal service. And that's what I was referring to. I do agree with your Honor that in this case the district court adopted or at least gave the benefit of the doubt to the appellant regarding its attempts of service. But I think what ends this case really is the exhibit that the appellant uses at the district court, which is the certified letter that is not marked as delivered. It's marked as refused, but I'm not exactly sure how that ends the case. Because the question is whether your client marked refused, which means that it was delivered to him, he had an opportunity to take it, and he didn't take it. So I'm not exactly sure how that ends the case. Well, we would argue it ends the case because the appellant has the, well at the time in the court, the moving party has the obligation to prove that Rule 45 was complied with. So they have to show that delivery was made by someone who is over 18 to the recipient of the subpoena. Well, the recipient can't unjustifiably refuse to accept the subpoena, as in this case, by marking refused if the recipient did that. Can they do that legally? Well, with those facts, let me answer your question. Can they do it legally? They cannot. All right. Well, then we don't know whether, in fact, your client did that, right? Well, under his declaration, he says he did. That's another question. Yes. And let's talk about the declaration. It seems to me that there are two concerns that I have, and you can try to disabuse me of them. If you've got the district court accepting the standard, even if it's spotting them and just assuming arguendo, the standard of reasonable assurance, the thing that led the district court to find that there was not reasonable assurance of delivery were two things. One, that your client did not receive it. And the only place the district court could have gotten that was from a declaration that was unsworn. It invoked Utah law, not federal law. In fact, it invoked the wrong statute of Utah law. That was the only place you could have gotten that fact. And then the other fact was the one related to him knowing about the real residential address of Mr. Thurston, and the only place he could have gotten that was out of the certificate of service. And so those two facts seem to me to form clearly erroneous starts coming in my mind when I see those two facts. So tell me why I'm not wrong. And if that is clearly erroneous, then even if you say the district court applied the right legal standard, it did err because its determination that he loses was predicated on clearly erroneous factual determination. So I'm ready. Tell me why that's wrong. Thank you. And I have three answers to that. The first would be the declaration that the district court appeared to rely upon. So under the declaration, Thurston Wright states that he declares under criminal penalty. And it cites the wrong statute. It cites state statute, and it's the wrong statute. We agree with that. It doesn't say under penalty of perjury. Criminal penalty. Yes, that language is not used, and I found some cases that indicate that language is a distinction with a difference. I mean, the whole point is when you use the word perjury, that's interim. That makes it clear. So yes, okay. Go ahead, please. Okay, well, I guess that point was not briefed by us or argued by us. But what he does say is that he does declare under criminal penalty. Let me just pull this up so I have this right in front of me. And then he cites the wrong law, the wrong statute. But if you look to the federal statute, here we are. I have it right here. He says, I declare under criminal penalty of the state of Utah that the foregoing declaration is true and correct to the best of my knowledge. And I admitted the statute in there because it's the wrong statute. But if you look, and the magistrate points that out in her decision. And didn't even consider it, refused to consider the declaration. And refused to consider it, and she says that it's wrong under 28 U.S.C. 1746. And she says he doesn't cite to that statute, although if you read the statute, you don't have to cite to it. You have to use the language, and he didn't use the language either. You have to say that you're declaring under penalty of perjury of the laws of the United States. That's right, and he didn't do that. Well, criminal penalty under the state of Utah is a law under the United States. Laws of the United States and laws of Utah are different. They are separate. Yes, separate sovereigns. Okay, you had three points. Okay, and the next point is that, I forgot my third one now, but the next one is, he has to, it is incumbent upon the moving party to prove that delivery was received. And the only evidence, this goes back to the envelope, is this envelope that's marked refused. And if you look to the rule under Rule 45, well, that's my third point. The second one is, there is no evidence to say that he actually received it. There's evidence that indicates refusal. Now, what we're talking about is whether there was sufficient evidence. If you are accepting this legal standard, reasonable assurance of delivery, and you've got a document that says refused, I mean, I'm not saying that there aren't factual issues here to be resolved, but if the two facts are he never got it, and let's assume for the moment you can't rely on that fact, then the other fact is that he knew about the residence address, the attorney did. Well, if all you've got is their certificate of service, that you're inferring that from the motion to enforce, tell me why that is plausible evidence. I mean, why one can actually rely on that to make a determination, particularly when he's vociferously saying, no, no, no, that's not true. Well, and I go back, and I want to make sure I answer your question, but I go back to thinking about the standard as when a district court judge is looking at this. They're looking at a movement, trying to move to hold a party in contempt, and they have to show that that party actually was served. There has to be evidence that that party received the document and was handed that document by someone who's over the age of 18. The evidence in this case is that we have a certified letter that's marked refused. We don't know who marked it refused. All we know that it was marked refused, and it was sent to a peel box that's claimed to be the recipient. That is not enough evidence to show that it was received by the subject of the subpoena. Okay, let me frame it then this way. If the court determines that it is insufficient evidence, and the question that the court was answering is, was this mailing, this certified mail, reasonably assured to receive a ride? That was the question the district court dealt with, and it relied on these two facts to decide to the contrary. If you knock out for the moment, I didn't never got it, then the only other fact is the one that is predicated on the receipt of service or the certified certificate of service. At a minimum, isn't that a factual issue that the court needed to resolve before it made a determination? I mean, at a minimum, didn't the court have to decide one way or the other how that would happen? Because all you had was this piece of paper. I mean, was it a reasonable inference by the fact that he had a certificate of service in January that he knew about it at the time he served the subpoena? And I would say no, and this goes to my third point. You'd say no, it was not a reasonable inference. I think the court has enough to conclude that he did not receive service, and it goes to my third point. Okay, please. Which is under 45B-4. Under Rule 45, there is a specific rule as to what must be done to certify, or I'm sorry, to prove that service was done. And under that 4, it says that there must be a statement proving service, and the statement must be made and certified by the server, and that is completely absent in this case. All we have is a document that's marked refused, and that is actually the problem with doing certified mail, because ultimately there might be evidence that it was served and that it was received that goes to this reasonable assurance standard, but you don't have a certified statement by someone actually serving the document. But is what he needed to prove that he served it by a means that was reasonably assured to get there? Does he have to prove anything more than that? No, he has to prove that it was under 45B-4. He has to prove that it was actually served. Well, I mean, he has to prove service. It says service means deliver to, okay? And if you tried to do everything that is designed to deliver to, I mean, if you're, and I'm not saying this is true, let's take a hypothetical person. If I'm running around the room trying to hand you something, and you're evading me, I mean, and I can never put it in your hand because you're faster than I am, you mean to tell me that I can't go to the court and say, look, I tried to give it to him. He escaped me. I mean, I think in the course of preparing, I think I read cases where it says, no, no. And indeed that Gulfport case, I guess, talks about multiple times they tried to serve the guy. Well, why is that the same if it's your client who's signing the refused? Why isn't that enough? Well, it's not enough because we have different facts. In your hypothetical, you're in the room, I'm in the room, I'm running. We have all these facts, and you can certify it to the court as to what happened there. Here, we don't have enough facts. We don't have a certification under B-4 saying that the server actually placed the envelope in the recipient's hand or attempted to give it to the recipient, and they refused it. Okay, let me just ask you this question. If – let's just work with me for a second. Let's assume that I found that there was clearly – the court predicated its legal determination on clearly erroneous factual findings, okay? Is there – would you win anyway because his showing was insufficient under the rule itself? I would say yes, and that was my final point is that I think you get to the same conclusion because there's not enough evidence under B-4 to show that the document was served. And we'd ask this court – I see I'm out of time, but we'd ask this court to affirm the decision, and I appreciate your time and your patience this morning. Counsel? Thank you. Let's see. Do we have any rebuttal time? Okay. Thank you, counsel. You're excused. The case shall be submitted, and the court will be in recess until further notice.